## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBYN L. GRITZ,                          :        Case No. 1:18-cv-02712-KBJ

      Plaintiff                          :
                                                  July 14, 2019
          vs.                           :

FEDERAL BUREAU OF INVESTIGATION,         :

      Defendant.                         :


## PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

      Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiff Robyn L. Gritz hereby moves for leave to file a First Amended Complaint. Pursuant to Local Rule 7(m), counsel for the Plaintiff has conferred with counsel for the Defendant. Defendant did not concur with amending the complaint and will inform the Court of their position separately. The grounds for this motion are as follows:

      1)      On November 20, 2018, the Plaintiff filed a complaint alleging the Defendant violated her rights under Title VII of the Civil Rights Act of 1964. On May 24, 2019, the Defendant moved to partially dismiss the Complaint, and Plaintiff Robyn L. Gritz now respectfully requests permission to file a First Amended Complaint.  The First Amended Complaint in this action attempts to more fully and correctly reflect and buttress the totality of the due process violations against Plaintiff, the United States Government (USG) policy violations committed during investigations regarding Plaintiff, and the many lies told about Plaintiff by Defendant, all in violation of Plaintiff's enshrined rights.

      2)      Pursuant to Local Civil Rule 15.1, Plaintiff attaches to this motion the proposed pleading as amended. *See* Exhibit A.

3)      The new allegations Plaintiff seeks to add in the First Amended Complaint are as

follows:

    a)  In the days leading up to the June 15, 2012 informal EEO meeting between

Plaintiff and FBI EEO counselor Regina Fields, Plaintiff had contacted at least 5

EEO counselors before she could get an appointment set up. The appointment

date was changed several times before Plaintiff eventually met with Regina

Fields. EEO Counselor Regina Fields did not inform Plaintiff that any future

incidents of discrimination or retaliation that would occur after Plaintiff had filed

her original EEO complaint would require separate formal EEO complaints.

Plaintiff was informed only that she was not allowed ADR/mediation because she

was under OPR; the counselor's synopsis later incorrectly stated that Plaintiff had

been offered ADR/mediation.

    b)  In an email on or about June 13, 2012 from Petrowski to Schwein, Petrowski

accuses Plaintiff of "sneaking away" to attend a "USN sponsored conference"

without prior approval and later stating that Plaintiff "giggled" at the accusation

she had snuck away. Plaintiff had notified Petrowski of her intent to attend, as the

conference was an interagency conference for individuals working Yemen and

Somalia. Petrowski had stated that Plaintiff attended the meeting "to meet Navy

SEALs", when in fact Plaintiff was tasked to attend the conference by Deputy

Chief YSD as a YSD representative. When Plaintiff returned, Petrowski stated

that Plaintiff obviously didn't know her responsibilities as a detailee, screamed at

Plaintiff that "you think you got one over on me," and then stormed out of his

own office.

c)  In a phone call between Schwein and Plaintiff on June 14, 2012, Schwein stated that Plaintiff's personal life was fragile and may be affecting her job, and that maybe the detailee position wasn't the right job for Plaintiff. On another occasion in his office, Schwein asked Plaintiff if she wouldn't rather take a less stressful job in a Resident Agency office. Schwein continued to regularly initiate conversations about Plaintiff's emotional well-being, divorce, and EAP activity.

d)  In a February 7, 2012 phone conversation between Gary Douglas Perdue and Richard Schwein, Perdue told Schwein that he had been made aware by an EAP counselor that there was a concern Plaintiff was going to "hurt herself". Wendy Nickel, the EAP counselor Perdue claimed shared this information, adamantly denied the charge and informed Plaintiff that Perdue was always attempting to inquire regarding Plaintiff's personal information when Plaintiff was in WMDD. Perdue was never in Plaintiff's chain of command and repeatedly undermined Plaintiff and her professional responsibilities on numerous occasions while he was a Section Chief in WMDD. Schwein and Perdue contend that the conversation regarding Plaintiff was about EAP concerns, yet as senior management, they chose not to follow any EAP protocol.

e)  After Plaintiff was effectively relieved of her duties at CIA CTC on July 3, 2012, Ley told Plaintiff that she knew Plaintiff did a good job and that AD McCabe wanted to get Plaintiff out of the situation due to Plaintiff's health concerns. DAD Ley further claimed that Plaintiff would be working strategic projects for the Strategic Operations Section. In Plaintiff's PAR and other paperwork, the reason

for removing Plaintiff was stated as not being a good fit, being incompetent, and other negative notations. DAD Ley lacked candor when she told Plaintiff her new position would make use of Plaintiff's strategy skills on strategic projects. Further DAD Ley lacked candor in telling Plaintiff that she would report to Thomas Van Nuys. DAD Ley lacked candor when discussing with Plaintiff why she pulled Plaintiff back to CTD, whether or not Plaintiff had done a good job, what Plaintiff's new job and role would be, and who Plaintiff would report to in her new position.

f)  Plaintiff was involuntarily transferred to LX-1 despite having secured a job at Quantico in order to escape the hostile work environment and ongoing retaliation against Plaintiff. Regarding Plaintiff's new LX-1 position, CTD took special measures to try to maintain an appearance of not demoting Plaintiff from her GS-15 grade, however Plaintiff was simultaneously subjected to menial work and a hostile, retaliatory, and discriminatory environment.

g)  Plaintiff informed DAD Ley that she did not want Schwein involved in her PAR because of the pending EEO complaint, previous acts of reprisal, the fact Plaintiff had worked under Schwein for not even half of the rating period, and the fact the OPR notification process instructed Plaintiff not to have contact with Schwein.

h)  The July 19, 2012 incident in which Schwein stopped Plaintiff following Plaintiff's exiting a meeting room at LX-1 in order to inform Plaintiff that he thought she was too emotional, took things personally, and was unprofessional

because of it. Schwein used similarly gender stereotyping language on Plaintiff's
360 and PAR.

i) At no time in the EEO/EEOC process was plaintiff counseled or otherwise
informed that each future individual incident of discrimination or retaliation
would require Plaintiff to file a new claim within the EEOC process.

j) On October 26, 2012, when Plaintiff went to sign her PAR despite being on sick
leave, Schwein was present and conducting the PAR. Despite Plaintiff's consistent
protest and the numerous policy and ethics violations involved with Schwein
conducting Plaintiff's PAR, Plaintiff was ignored, including by the FBI's EEO
office.

k) During the PAR presentation, Schwein admitted he had not consulted with YSD
Deputy Chief, who had tasked Plaintiff and managed her time and attendance
when Plaintiff was a detailee with YSD.

l) On November 9, 2012 Plaintiff filed a grievance to AD McCabe of her PAR
ratings and attached an addendum with a two inch binder of classified documents
justifying the grievance, tabbed by Critical Element. The grievance was denied by
AD McCabe, who cited insufficient justification to change ratings. However, AD
McCabe did violate OPM policy by choosing to "white-out" an inappropriate
sentence in which Schwein uses the OPR investigation as a justification for
Plaintiff's negative PAR ratings.

m) On November 26, 2012, Plaintiff became aware that AD McCabe denied her a
lateral transfer to FBIHQ, which would have lessened her time in the location
where she was targeted and retaliated against. McCabe provided false information

through FD-955s, which damaged Plaintiff, to the career boards for jobs Plaintiff had applied to. These submissions by McCabe directly impacted Plaintiff's prospects for those positions. AD McCabe's comments in the FD-955s are based on false and otherwise misrepresented information derived from the falsities obtained during the OPR investigation and the false narrative constructed by Schwein and Petrowski. On February 14, 2014, Plaintiff became aware that the FBI had told the Commonwealth of Virginia that Plaintiff had been discharged for misconduct, which disqualified Plaintiff from unemployment benefits.

n) The OPR investigation into Plaintiff violated and disregarded multiple USG and ODNI policies which directly govern the roles of detailees regarding the relationship between the gaining agency and the employing agency. Plaintiff made HRD, CTD HR, Inspection, EEOA, OGC, and finally CTD AD Andrew McCabe aware of the USG and ODNI policy violations performed in the OPR investigation. Paragraphs 148-227 outline the wide array of the policies violated and the false information obtained during the OPR investigation, which is directly rebutted by Plaintiff with facts.

o) Plaintiff filed four requests for reasonable accommodations dated March 1, 2013, supported by multiple physicians and medical documentation. Plaintiff was denied after filing an FD-766 Voluntary Leave Program Request for Approval as Leave Recipient despite a recent diverticulitis attack and a loss of work noted by physicians. Further, Plaintiff had been ordered out of work periodically by doctors due to the diverticulitis.

p) Schwein received an award from the CIA based, at least in part, on falsely claiming Plaintiff's accomplishments as his own on his PAR. In Schwein's PAR narrative, Schwein stated that there was one unfounded EEO complaint in response to an OPR, despite the fact that Plaintiff began the EEO process before an OPR was filed and Schwein had directly threatened OPR reprisal against Plaintiff if she contacted the EEO office.

q) The ROI in this case was initially so heavily redacted that it didn't include Plaintiff's own statement or the issues accepted for investigation. Further, it stated that Plaintiff failed to provide names of witnesses in her sworn statement, despite witness names appearing on pages 8-11 of Plaintiff's sworn statement. The only witnesses the EEO investigator interviewed were the same RMOs interviewed in the retaliatory OPR against Plaintiff. The ROI did not consider exculpatory evidence which would have directly rebutted the very issues spuriously raised against Plaintiff in the OPR. The first time that Counsel was made aware of the issues accepted for investigation was when the accepted issues were fully listed and unredacted in the FAD. The inappropriate redactions were not in line with USG policy for classification and, in concert with the motion to dismiss which threatened Plaintiff's counsel with "significant delay", effectively forced the matter to FAD, depriving Plaintiff of her statutorily mandated choice to have her case heard by an independent EEOC AJ.

r) `The OFO decision falsely stated that Plaintiff never requested a less redacted copy of the ROI or otherwise supplement the record. Plaintiff requested an un-redacted ROI in a Discovery motion dated March 31, 2014. The OFO decision

disregarded the numerous ODNI, FBI, CIA, and other USG policies and laws

broken in Plaintiff's case.

s) In the First Amended Complaint, Plaintiff brings a charge of Retaliatory Hostile

Workplace Environment in violation of Title VII of the Civil Rights Act of 1964,

as amended. Plaintiff brings this claim because the FBI created and maintained an

abusive environment in which retaliatory intimidation, ridicule, and insult were so

severe and pervasive that it altered the terms and conditions of Plaintiff's

employment and violated Title VII. Plaintiff has suffered physical and emotional

distress because of the retaliatory hostile work environment.

t) In the First Amended Complaint, Plaintiff brings a charge of Hostile Work

Environment based on Sex and Gender Discrimination, in violation of Title VII,

because the FBI subjected Plaintiff to harassment and discrimination based on the

totality of the facts, including the constant slander against Plaintiff and multiple

insinuations by FBI management officials that Plaintiff "wanted to date" male

colleagues, "giggled" in response to serious accusations, was emotional, took

things personally, and other gender stereotyped insinuations and accusations.

Plaintiff has suffered physical and emotional distress because of the

discrimination and hostile work environment.

u) In the First Amended Complaint, Plaintiff brings a charge of Constructive

Discharge in violation of Title VII because the FBI's previously discussed

discrimination, retaliation, and other unfavorable treatment of Plaintiff caused her

working conditions to become intolerable. Based on those intolerable work

conditions, Plaintiff reasonably concluded that she had no option but to end her

employment with the FBI, and Plaintiff has suffered physical and emotional distress because of the constructive discharge.

4)      Under Federal Rule of Civil Procedure 15(a), the First Amended Complaint may be further amended "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."   Fed. R. Civ. P. 15(a)(2).

5)      Motions to amend the complaint are liberally granted by this Court. *See Adams v. Quattlebaum*, 219 F.R.D. 195, 197 (D.D.C. 2004) ("[C]ourt[s] must . . . heed Rule 15's mandate that leave is to be 'freely given when justice so requires.'"). The D.C. Circuit has adopted a liberal approach to the amendment of pleadings to ensure that claims will be decided on the merits rather than on technicalities. *Belizan v. Herson*, 434 F.3d 579, 582 (D.C. Cir. 2006). Leave should only be denied upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); see also *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999). Moreover, prejudice to the party opposing the amendment must be substantial in that the amendment must cause a serious impairment of the non-movant's ability to present its case. *Cf. Djourabchi v. Self*, 240 F.R.D. 5, 13-14 (D.D.C. 2006). The party opposing the amendment bears the burden of showing such substantial or undue prejudice. *Atlantic Bulk Carrier Corp v. Milan Express Co., Inc.*, No. 3:10cv103, 2010 WL 2929612, at *4 (E.D. Va. 2010). Pertinent considerations in analyzing whether "undue prejudice" exists include: whether the proposed amendment (1) "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation," (2) requires the defendant to expend

significant additional resources to conduct discovery and prepare for trial; and (3) will

significantly delay the resolution of the dispute. *See Djourabchi*, 240 F.R.D. at 13.

      6)     There has been no undue delay in filing this motion, as Plaintiff filed it soon after

reviewing the extensive network of information surrounding this matter. The newly pleaded

information provides good-faith grounds to assert additional allegations regarding the same

common nucleus of fact, that being the time period and those incidents of discrimination and

retaliation which created a hostile work environment.  These incidents became more severe and

frequent immediately after Plaintiff's EEO protected activity.

      7)     The filing of the proposed First Amended Complaint will not cause Defendant to

suffer undue prejudice. When considering whether an amended pleading would impose undue

prejudice on a party, the inquiry centers on whether the amendment will put a litigant at some

litigation disadvantage (e.g., by denying a litigant an opportunity to participate in discovery or

motion practice). *See Teltschik v. Williams & Jensen*, 683 F. Supp. 2d 33, 42 (D.D.C. 2010)

(denying leave where proposed amendment came "years after [plaintiff] filed his original

complaint and after the parties conducted extensive discovery"). Here, Defendant will not be

deprived of any discovery or any other rights in connection with the presentation of their defense

to Plaintiff's claims. Although the additional allegations do involve new claims and legal issues,

these new claims are derived from the same nucleus of information discussed in the original

complaint. Defendants will not have to expend significant additional resources as a result of the

proposed amendments.

WHEREFORE, Plaintiff respectfully requests that the Court permit the requested amendments.  A Proposed Order is attached.

Respectfully submitted,

July 14, 2019 **BARNES LAW**

*/s/  Derek Jordan*
Derek Jordan, Esq.
Tennessee Bar #34299
Admission *Pro Hac Vice*

BARNES LAW
601 South Figueroa Street – Suite 4050
Los Angeles, CA  90017
(310) 510-6211        Fax (310) 510-6225
derekjordan@barneslawllp.com
**Attorneys for Plaintiff Robyn Gritz**

July 14, 2019 **KLIMASKI & ASSOCIATES, P.C.**

*/s/  James R. Klimaski*
James R. Klimaski, #243543

Klimaski & Associates, P.C.
1717 N Street NW – Suite 2
Washington, DC  20036-2827
202-296-5600    Fax 202-296-5601
Klimaski@Klimaskilaw.com
**Local Counsel for Plaintiff Robyn Gritz**

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBYN L. GRITZ, | **:** | |
| Plaintiff | **:** | |
| | | Case No. 1:18-cv-02712-KBJ |
| vs. | **:** | |
| FEDERAL BUREAU OF INVESTIGATION, | **:** | |
| Defendant. | **:** | |

### ORDER

Upon consideration of Plaintiff's motion for leave to file a First Amended Complaint, filed July 14, 2019, Defendants' response thereto, and the entire record herein, it is

**ORDERED**  that the motion is granted and Plaintiff's proposed First Amended Complaint shall be filed.  It is further

**ORDERED**  that Plaintiff's First Amended Complaint shall enter the docket on the date of this Order.

_____          _____
Date                                                           KETANJI BROWN JACKSON
                                                                   United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 14, 2019, the above Motion for Leave to File First Amended

Complaint with a Proposed Order, and the attached First Amended Complaint, were served on

the following counsel for Defendant by CM-ECF Electronic Notice from the Court's Electronic

Filing Notification System:

      AUSA CHRISTOPHER C. HAIR
      Office of the United States Attorney
       for the District of Columbia
      555  4th Street NW
      Washington, D.C. 20530
      (202) 252-2541
      Christopher.Hair@usdoj.gov

                              _____
                              Jon Pinkus
                              Klimaski & Associates, P.C.